**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Olando JOHNSON, Defendant–
Appellant.**

**No. 90–5248.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1991.

Decided Dec. 19, 1991.

As Amended Jan. 7, 1992.

---

David Ferris Tamer, Law Offices of David F. Tamer, Winston–Salem, N.C., argued (Pamela Stanback Glean, Stanback, Stanback & Martin, P.A., Susan Hayes, Greensboro, N.C., on brief), for defendant-appellant.

John Warren Stone, Jr., Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Olando Johnson pled guilty, in the Middle District of North Carolina, to one count of Possession of Firearms by a Convicted Felon and was sentenced to 328 months of detention. He appeals his sentence, claiming that the trial court improperly categorized him as a "career offender" under the Sentencing Guidelines. Johnson also challenges the trial court's dismissal of two pretrial motions. We reject the latter argument, and affirm Johnson's conviction; however, we hold that Johnson was incorrectly designated as a "career offender" and, accordingly, remand the case for re-sentencing.

### I.

On August 23, 1989, officers of the Caswell County, North Carolina, sheriff's department asked Olando Johnson for written consent to search his residence and the surrounding property in connection with a homicide investigation. Johnson gave his consent. Pursuant to the search, the officers discovered a plastic bag containing nine firearms buried in the backyard. At a subsequent interview, after being advised of his rights, Johnson admitted that he was responsible for these weapons. Johnson was a convicted felon, making his possession of firearms illegal under 18 U.S.C. § 922(g)(1). Moreover, Johnson's criminal history included convictions for at least

three violent felonies, making him eligible for the mandatory sentence enhancing provisions of 18 U.S.C. § 924(e).

On September 10, 1990, following various unsuccessful pretrial motions, Johnson pled guilty to the charge of possession of firearms by a felon. At sentencing, the trial court found Johnson to be a "career offender" under the Sentencing Guidelines. This determination gave Johnson a base offense level of 37, which was adjusted downward by 2, to 35, for acceptance of responsibility, and a criminal history status of Category VI. The Guidelines produced a sentencing range of 292–365 months, and the trial court sentenced Johnson to 328 months.

## II.

The most significant of Johnson's contentions is that the trial court erred by finding him to be a "career offender" under the Sentencing Guidelines. Under the Guidelines:

a defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. It is undisputed that Johnson was over eighteen years old and that he had at least two prior felony convictions for violent crimes. Johnson's argument is that the instant offense, felon in possession of a firearm, should not be considered a crime of violence.

Section 4B1.2 of the Guidelines defines "crime of violence" for purposes of § 4B1.1 to be:

any offense under federal or state law punishable by imprisonment for a term exceeding one year that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious

potential risk of physical injury to another.

U.S.S.G. § 4B1.2. The statute under which Johnson was convicted, 18 U.S.C. § 922(g)(1), does not have as an element the use, attempted use, or threatened use of force, nor is it one of those offenses. explicitly listed in § 4B1.2(1)(ii). Thus, in order for Johnson to be classified as a career offender, the court must determine that his offense "involves conduct that presents a serious potential risk of physical injury to another." *Id.*

■ The first issue that must be resolved is whether, when making this decision, the court should look to the specific actions of the defendant in this particular case or to the general elements of the offense with which the defendant has been convicted. This issue has been the subject of a number of conflicting reported opinions and is further complicated by the fact that the Sentencing Commission, in the midst of the debate, changed the text of the "crime of violence" definition and twice changed the commentary that explains the application of that definition.

Prior to November 1, 1989, the commentary to § 4B1.2 read in relevant part:

Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

U.S.S.G. § 4B1.2, comment. (n. 1). This language became the basis of a dispute among the Circuits as to whether a sentencing court could weigh the defendant's actual conduct in applying the "crime of violence" definition, or whether the court was limited to considering an abstract definition of the offense. *Compare, United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Goodman*, 914 F.2d 696, 699 (5th

Cir.1990); *United States v. Maddalena,* 893 F.2d 815, 820 (6th Cir.1989); *United States v. Alvarez,* 914 F.2d 915, 918 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991) (all authorizing factspecific analysis of defendants' actions to determine whether "crime of violence" definition was satisfied), *with United States v. Becker,* 919 F.2d 568, 570 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1118, 113 L.Ed.2d 226 (1991); *United States v. Gonzalez–Lopez,* 911 F.2d 542, 547 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991) (both applying "crime of violence" definition to generic description of crime).

No doubt in response to this dispute, the Sentencing Commission revised the application note in the commentary to read:

> Other offenses are included where ... the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2, comment. (n. 2). This provision, by its plain language referring to "the conduct set forth in the count of which the defendant was convicted," directs the sentencing court to look to the description of the defendant's actions as charged in the indictment. *United States v. Leavitt,* 925 F.2d 516, 517 (1st Cir.1991). Especially when viewed in light of the language it replaces (that the sentencing court look to "the conduct for which the defendant was specifically convicted"), the revised commentary appears to disfavor a wideranging inquiry into the specific circumstances surrounding a conviction. *United States v. Hernandez,* 753 F.Supp. 1191, 1196 (S.D.N.Y.1990), *aff'd, remanded on other grounds,* 941 F.2d 133 (2d Cir. 1991).[1]

This conclusion is buttressed by two additional factors. First, effective November 1, 1991, after this case was briefed and argued, the Sentencing Commission again revised the commentary to U.S.S.G. § 4B1.2. The relevant passage now advises that, when determining whether an offense qualifies under the "crime of violence" definition, a court should assess "the conduct set forth (*i.e., expressly charged*) in the count of which the defendant was convicted." U.S.S.G. § 4B1.2, comment. n. 2 (emphasis added). The insertion of the parenthetical statement makes the plain meaning of the application note even clearer. In assessing a particular offense to determine if it is a crime of violence under the "catchall" provision of U.S.S.G. § 4B1.2, a sentencing court must confine its factual inquiry to those facts charged in the indictment. While the explanatory parenthetical did not become effective until after Johnson's sentencing, it must still be accorded substantial weight when interpreting the meaning of the commentary language that existed prior to its insertion.

Second, the Supreme Court's decision in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), lends support for the proposition that a sentencing court is limited to an evaluation of the conduct explicitly charged in the indictment. In that case, the Court interpreted 18 U.S.C. § 924(e), which provides a definition of "crime of violence" identical to that in § 4B1.2 of the Sentencing Guidelines (without, of course, the Sentencing Commission's commentary). The Court concluded that, for purposes of § 924(e), a court should apply the "crime of violence" definition to a statutory definition of the offense without reference to the specific facts of a particular defendant's conduct. According to the Court, this interpretation is consistent with the language of the defi-

---

1. The court in *United States v. Walker,* 930 F.2d 789 (10th Cir.1991), found the Sentencing Commission's revision to be inconsequential. Finding that the amendment to the Guidelines was "merely a clarification of the preNovember 1, 1989 definition," the court ruled that the various precedents interpreting the pre-revision standard remained undisturbed. *Id.* at 793. This analysis glosses over the significant changes in the language of the commentary and, for that reason, is unpersuasive. *See also United States v. Cornelius,* 931 F.2d 490, 493 (8th Cir.1991) (court adopts broad-ranging factual inquiry on the basis of decisions in other Circuits interpreting prerevision commentary).

nition and the legislative history of the statute. In the words of the Court:

> Congress generally took a categorical approach to predicate offenses. There was considerable debate over what kinds of offenses to include and how to define them, but no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case.

*Id.*, at 601, 110 S.Ct. at 2159, 109 L.Ed.2d at 628. Furthermore, the Court pointed out the practical difficulties in ascertaining the specific facts surrounding old convictions. The decision of the Court was in accord with the prior position of the Fourth Circuit. *See United States v. Headspeth*, 852 F.2d 753, 759 (4th Cir.1988).[2]

Several courts have attempted to draw a distinction between prior offenses and the instant offense, applying fact-specific analysis to the instant offense only. The rationale for this distinction is that the difficulties in investigating the factual situations of prior convictions do not exist when analyzing the instant offense. *See Walker*, 930 F.2d at 794; *United States v. Coble*, 756 F.Supp. 470, 474 (E.D.Wash. 1991). While this approach has substantial

intuitive appeal, it is unsupported by the language of the Guidelines and must therefore be rejected. *See Hernandez*, 753 F.Supp. at 1198 ("Regrettably, ... Application Note 2 to the Guideline is made to do double duty: it limits a sentencing court's inquiry not only as to past offenses, which pose potentially intractable problems of proof and therefore warrant such limitation, but also as to the offense of conviction, which poses no such problems....").

■ Having settled this threshold issue, this court must accordingly look to Johnson's indictment to determine whether his actions, as set forth therein, should be classified as a "crime of violence." The indictment against Johnson contains very few specific facts concerning the circumstances surrounding his possession of the guns.[3] Thus, the question confronting this court is whether the offense, felon in possession of a firearm, in the abstract, should be considered a crime of violence.

This question has also been the subject of dispute among the Circuits. Two Circuit Courts have held that possession of a firearm by a felon is a *per se* crime of violence. *United States v. O'Neal*, 937 F.2d 1369,

---

**2.** The Third Circuit, addressing the choice between categorical or factspecific analysis under the "catchall" provision of U.S.S.G. § 4B1.2, attempted to distinguish *Taylor* on the grounds that *Taylor* dealt exclusively with predicate offenses that were expressly enumerated in the definition of "crime of violence." *United States v. John*, 936 F.2d 764 (3d Cir.1991). The *John* court pointed to a footnote in the *Taylor* opinion that stated, "Our present concern is only to determine what offenses should count as 'burglaries' for enhancement purposes. The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another....'" 495 U.S. at 600, n. 9, 110 S.Ct. at 2159, n. 9, 109 L.Ed.2d at 628, n. 9. *John* argued that, by making this distinction, the Court did not foreclose fact-specific analysis for those offenses that were not explicitly listed in the definition, but potentially satisfied the other "catchall" prong of the definition. The *John* distinction is unpersuasive. Although it is true that the Supreme Court addressed itself only to an offense explicitly mentioned in the definition, its observations regarding the language

and history of the statute as well as the practical difficulties in the fact-specific analysis, apply with equal force to the "potential risk of physical injury" prong of the definition.

**3.** The relevant text of Count One of the Superseding Indictment reads as follows:

> On or about August 23, 1989, in the County of Caswell, in the Middle District of North Carolina, OLANDO JOHNSON, having been convicted of crimes punishable by imprisonment for terms exceeding one year ... knowingly did possess in commerce and affecting commerce seven firearms, that is, an EIG .22 caliber revolver, Model E15, Serial Number 350322; a Browning 9mm pistol, Serial Number 73C69557; a Browning 16–gauge shotgun, Serial Number X78923; a Remington 12–gauge shotgun, Model 1100, Serial Number L506930V; a Remington 12–gauge shotgun, Model 870, Serial Number 453544V; a Sears 20–gauge shotgun, Model M200, Serial Number P214612; and a Universal 30–caliber rifle, Serial Number 133357; in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1).

Superseding Indictment (July 30, 1990).

1372 (9th Cir.1990);[4] *United States v. Stinson,* 943 F.2d 1268, (11th Cir.1991). One Circuit has held that the offense is not a *per se* crime of violence, *United States v. Chapple,* 942 F.2d 439 (7th Cir.1991), and another has strongly indicated in dicta that it would reach the same result. *United States v. Williams,* 892 F.2d 296, 304 (3d Cir.1989) ("possessing a gun while firing it ... is a crime of violence; possession without firing the weapon is not"). A number of other Circuits have had occasion to address the classification of the felon in possession of a firearm offense as a "crime of violence" but have declined to articulate a *per se* rule. These courts have based their decisions (impermissibly, we believe, in light of the current Guideline language) on the specific factual scenario of the conviction, with the consensus being that a crime of violence entails "possession of a weapon *plus* some overt action implying or indicating its use." *Chapple,* 942 F.2d at 441. *See, e.g., Goodman,* 914 F.2d at 699; *Walker* 930 F.2d at 795.

The only prior Fourth Circuit decision that provides any guidance on this issue is *United States v. Thompson,* 891 F.2d 507 (4th Cir.1989), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). That case, decided under the previous version of § 4B1.2, ruled that a prior conviction under a South Carolina statute outlawing the pointing of a firearm at a person did qualify as a violent crime for purposes of "career offender" status. In reaching the decision, the court emphasized the substantial risk of physical force that is "invariably present" in this type of offense. *Id.* at 510.

By contrast, simple possession of a firearm by a felon does not present the same immediate threat that this court relied upon in *Thompson.* The danger inherent in the mere possession of a firearm is, in many cases, too highly attenuated to qualify the offense as a *per se* "crime of violence." In the present case, the guns possessed by Johnson were buried in his backyard. Although, as discussed above, the specific facts of a defendant's conviction should not be considered in determining whether his offense constitutes a violent crime, these facts provide a perfect example of why the abstract offense, felon in possession of a firearm, should not automatically be considered a "crime of violence." Any "serious potential risk of physical injury to another" depends upon a speculative chain of events in which Johnson recovers the guns and then brandishes them in the presence of another person. Such violent conduct may often underlie a charge of gun possession, but it is not a necessary element of that offense. While a felon in possession of a firearm may pose a statistical danger to society, we refuse to interpret this statistical threat as evidence of specific intent on the part of an individual defendant. We hold, therefore, that the offense, felon in possession of a firearm, in the absence of any aggravating circumstances charged in the indictment, does not constitute a *per se* "crime of violence" under the provisions of U.S.S.G. § 4B1.2.[5]

### III.

Johnson also makes the argument that his conviction should be overturned because of the trial court's improper dismissals of his motion to suppress evidence and motion to dismiss the indictment based on governmental misconduct before the grand jury. In both instances, we affirm the district court's rulings.

 The record clearly reflects the fact that Johnson's motion to suppress evidence was filed on the eve of trial, nearly three weeks after the trial court's deadline for submission of pretrial motions. Defense counsel showed no cause for the failure to file the motion within the allotted

**4.** *But see United States v. Coble,* 756 F.Supp. 470, 473 (E.D.Wash.1991), arguing that *O'Neal,* which was decided under an earlier version of the § 4B1.2 definition of "crime of violence," did not survive the revision of that provision.

**5.** We note parenthetically, in support of our conclusion, that effective November 1, 1991, the commentary to U.S.S.G. § 4B1.2 was amended and now states, "The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." *Id.,* comment. (n. 2).

time frame. The trial judge, although he did comment that the motion appeared on its face to be without merit, actually dismissed the motion on the grounds that it was untimely. Motions filed out of time are accepted at the discretion of the trial court, and this court will not entertain challenges to the proper use of this discretion. *United States v. Chavez,* 902 F.2d 259, 262–263 (4th Cir.1990); *United States v. Badwan,* 624 F.2d 1228, 1232 (4th Cir. 1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981).

 Johnson also appeals from the trial court's dismissal of his motion to dismiss the indictment based on governmental misconduct before the grand jury. This motion was filed at the same time as the motion to suppress, but defense counsel had cause for the delay (late receipt of the grand jury transcripts). Accordingly, the trial court weighed this motion on its merits.

Johnson claims that the Government's witness introduced "irrelevant and inflammatory material," which unfairly biased the grand jury. Specifically, Johnson objects to the fact that the witness was allowed to testify that Johnson was a suspect in a homicide investigation and that he had prior convictions for attempted murder and use of a firearm during an attempted murder.

Johnson's claims are unfounded. The transcript of the hearing indicates that the Government's witness testified as to the homicide investigation solely to explain the presence of the police officers at Johnson's residence. Furthermore, the references to attempted murder and use of a firearm were necessary subjects of testimony since the Government was required, as an element of the instant offense, to prove that Johnson was a convicted felon. The trial court ruled that the testimony was not a "flagrant or persistent abuse of the grand jury process," and there is no reason to disturb this finding. *See United States v. Abbott Lab.,* 505 F.2d 565, 573–574 (4th Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 671 (1975) ("primary purpose" of grand jury testimony was not to prejudice jurors against defendants).

**IV.**

Finding no error in the trial court's rulings on Johnson's pretrial motions, we hereby affirm Johnson's conviction. We hold, however, that it was error for Johnson to be classified a "career offender" under the Sentencing Guidelines and we, therefore, vacate his sentence and remand this case for resentencing in conformance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.